**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas W. McPHEE,
Defendant-Appellant.**

**No. 83–2072.**

United States Court of Appeals,
Fifth Circuit.

April 30, 1984.

Ramon Garcia, Edinburg, Tex., Hugh M. Davis, Jr., Detroit, Mich., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Thomas W. McPhee was convicted of making a false statement to a federal agency in violation of 18 U.S.C. § 1001. The prosecutor made prejudicial statements to the jury during closing argument, thus denying McPhee a fair trial. The conviction is reversed.

*Facts*

Raymond Kyral pled guilty in November 1979 to a charge of making and subscribing false income tax returns, in violation of 26 U.S.C. § 7206(1). The court imposed a one-year suspended sentence and placed him on supervised probation for 18 months. As a special condition of his probation, the court required that Kyral file 1977 and 1978 tax returns with the Internal Revenue Service within 90 days.

McPhee, a Special Agent with the Internal Revenue Service in Harlingen, Texas, was instructed by his supervisor to audit Kyral's returns upon their receipt. After meeting with Kyral's accountants, McPhee telephoned Antonio Flores, Kyral's probation officer, and informed him that Kyral was cooperating with the IRS and his accountants needed a 90-day extension to complete the returns. Flores relayed this information to the court and recommended that Kyral be granted the requested extension. After Flores obtained two additional time extensions for Kyral based upon McPhee's progress reports and recommendations, the court set December 15, 1980 as the final deadline for the submission of Kyral's 1977 and 1978 returns.

On December 11, 1980, Kyral's accountants delivered the delinquent tax returns to McPhee. The returns were not signed. McPhee accepted the returns notwithstanding the provisions of 26 U.S.C. § 6061 and 26 C.F.R. § 1.6061(a) (1983), which provide

in essence that, with few exceptions, unsigned tax returns are invalid.

McPhee telephoned Flores later on December 11, 1980 and represented that Kyral had submitted his 1977 and 1978 tax returns as required by the special condition of probation. McPhee confirmed this information in a letter to Flores dated December 22, 1980, which stated:

> This memo confirms our telephone conversation pertaining to Ray Kyral. Mr. Kyral has submitted to our agency his delinquent 1977 and 1978 Federal Income Tax returns in accordance with the terms of his probation. He has also filed his 1979 1040. Mr. Kyral has been very cooperative in disposing of this matter....

Relying on McPhee's statements, Flores wrote his superiors suggesting that Kyral's probation be converted from supervised to unsupervised. The probation office recommended termination of supervised probation. The court accepted the recommendation and modified Kyral's sentence.

McPhee was indicted for making a false statement regarding a material fact of probation. In response to defendant's Motion for a Bill of Particulars, the government stated that the false statement involved was McPhee's report to Flores that Kyral had filed valid 1977 and 1978 tax returns as required by the court.

### Analysis

McPhee assigned six errors. We find only one meritorious, impermissible prosecutorial comment. The prosecutor insinuated a scheme of bribery or pay-offs as motivating McPhee's official reports to Kyral's probation officer. During closing argument the prosecutor posed rhetorical questions to the jury:

> Why was Mr. McPhee going to give Kyral a break of a quarter of a million dollars in taxes? We can only guess ...
> Also, McPhee did not require Kyral to sign any tax returns. Why did he give Mr. Kyral the benefit of escaping the penalties of perjury? We can only guess.

> Why was he being so kind to Mr. Kyral: doper; air smuggler? We can only guess...
> How many breaks has he given to Kyral, and why? Those are things that we can only speculate about.

The prosecutor capped his prejudicial appeal to the jury, over McPhee's objection which the court overruled, by stating:

> And all this business about work sheets and all of that, that doesn't matter. Mr. McPhee had a job to do and he didn't do the job. But he went the step further and he lied to the Probation Office. And that's why we are here charging him with making false statements. *We are not just making charges against Mr. McPhee for making false statements. We are not saying, "Listen, this is a little, old thing." We are charging him and we want you to find him guilty because of a bunch of other reasons. For giving a taxpayer a break of a quarter million dollars.*

(emphasis added).

■ As the Supreme Court observed nearly a half century ago, the prosecutor "may prosecute with earnestness and vigor —indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed.2d 1314 (1935). To determine whether the prosecutor violated this rule, the reviewing court "must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants." *United States v. Rhoden,* 453 F.2d 598, 600 (5th Cir.1972). Pertinent factors include: (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt. *Id.*

■ Weighing the statements made by McPhee's prosecutor against this backdrop, we conclude that the closing argument was a proscribed foul blow. First, the prosecutor's statements severely prejudiced McPhee's right to be tried only for the

crime charged in the indictment. The prosecutor's seriatim questions blatantly implied the existence of serious extrinsic offenses. If that were not enough, the prosecutor expressly asked the jury to find McPhee guilty not merely for making false statements, but rather, "we want you to find him guilty because of a bunch of other reasons."

■ Second, the court gave no cautionary instruction at the time of the improper argument. The later reference in the jury charge that McPhee was "not on trial for any act or conduct or offense not charged in the indictment" was grossly inadequate under the circumstances.

The final factor relates to the extent of the evidence. The jury deliberated over a two-day period and one hour before returning the guilty verdict it reported to the court that it was unable to reach a decision. The jury's apparent difficulty is understandable. Although sufficient to support a conviction, the evidence cannot candidly be categorized as overwhelming.

In *United States v. Labarbera*, 581 F.2d 107 (5th Cir.1978), we held that a defendant was deprived of a fair trial when the prosecutor indicated to the jury that he knew the defendant was involved in other criminal conduct. In *Dunn v. United States*, 307 F.2d 883 (5th Cir.1962), a prosecution for tax evasion, we found improper and prejudicial the prosecutor's insinuation that the unreported income resulted from kickbacks which the prosecutor suggested was a commonplace practice for politicians like the defendant. The instant case fits within the *Labarbera-Dunn* mold.

■ In reversing we echo the exhortation by the Supreme Court in *Berger*, 295 U.S. at 88, 55 S.Ct. at 633:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer ... It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

REVERSED and REMANDED.