**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Newton GASPARD,
Defendant-Appellant.**

**No. 84–4233.**

United States Court of Appeals,
Fifth Circuit.

Oct. 9, 1984.

Rehearing and Rehearing En Banc
Denied Nov. 7, 1984.

Joseph Kosarek, Abbeville, La., for defendant-appellant.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Newton Gaspard was convicted on twelve counts of mail fraud for violations of 18 U.S.C. § 1341. He received twelve concurrent sentences of a year and a day and was fined a total of $12,000. Gaspard alleges nine points of error. We reject his contentions and affirm the convictions.

## I. *Background*

The twelve counts arise out of Gaspard's employment at N L Baroid ("Baroid"), a major manufacturer and distributor of drilling mud and other products used in the oil industry. Gaspard's employment responsibilities included directing the ordering, purchasing, and receiving of materials to Baroid from outside vendors and insuring the distribution of Baroid products to its customers.

The twelve counts on which Gaspard was convicted[1] may be divided into three groups. Counts I through V deal with Gaspard's majority ownership of South State Oil & Gas ("SSOG"). These counts allege that Gaspard defrauded Baroid by buying diesel for SSOG, storing that fuel in Baroid's own tanks, and then "selling" that diesel to Baroid at a higher price. Counts VI through X concern Gaspard's operation of Ed's Tank Cleaning Service and Cajun Tank Cleaning Service. According to the indictment, Gaspard used Baroid employees (often while they were on duty to Baroid) then billed Baroid for the services supposedly performed by Ed's Tank Cleaning. Counts XV and XVI allege that Gaspard had concrete poured at the homes of relatives, approved the concrete invoices as having been received by Baroid, and then caused Baroid to pay for the concrete. All twelve counts alleged use of the mails to accomplish these aims.[2]

---

1. Originally there were sixteen counts in the indictment. Counts XI through XIV were severed from the twelve counts at issue here and were dismissed without prejudice after the instant conviction. *See* Rec.Vol. II at 232–34.

2. Gaspard, for the first time on appeal, argues that Counts I through X are insufficient in failing to allege the elements of mail fraud. This argument is without merit. This Court has explicitly held that the essential elements of an indictment for mail fraud are "(1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme." *United States v. Kent,* 608 F.2d 542, 545 (5th Cir. 1979) *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980). *See also United States v. Freeman,* 619 F.2d 1112 (5th Cir.1980), *cert. denied sub. nom., Patrick Petroleum Corp. of Michigan v. United States,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Contrary to Gaspard's contentions, the Court has held that the "indictment need not specifically charge, but the government must prove 'a specific intent to commit fraud.'" *Freeman,* 619 F.2d at 1117 (quoting *Kent,* 608 F.2d at 545 n. 3). *See also United States v. Goss,* 650 F.2d 1336, 1346 (5th Cir.1981). The indictment here meets the *Kent-Freeman* standard.

Even if *Kent-Freeman* did not apply, however, the indictment is sufficient. Since Gaspard did not challenge the indictment below, this Court will reverse only if the indictment "cannot within reason be construed to charge a crime." *United States v. Cauble,* 706 F.2d 1322, 1333 n. 25 (5th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 966, 79 L.Ed.2d 229 (1984). Although Gaspard contends that the indictment fails to allege concealment or specific misrepresentation, Counts I through V clearly alleged that Gaspard formed the SSOG scheme "intending to ... defraud and to obtain money under false and fraudulent pretenses...." Rec.Vol. I at 3. Likewise, Counts VI through X charged that Gaspard "devised a scheme and artifice to defraud...." *Id.* at 7. From this, a fair reading of the indictment shows that Gaspard was fairly informed of all elements of mail fraud, including the specific intent to defraud. *Id.* at 1333. *See also United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir.1983) (indictment sufficient where it states essential elements of offense and gives sufficient notice so that defendant may prepare his defense).

## II. *Sufficiency of the Evidence*

In addition to showing use of the mail in a mail fraud case, the government must show a scheme or artifice to defraud. This Court has held that the mail fraud statute extends to situations in which an employee intentionally fails to disclose information material to his employer that he has a duty to disclose. *See United States v. Ballard,* 663 F.2d 534 (5th Cir.1981) (focusing on duty to disclose and materiality). In addition, the government must show that "the violation of [the] fiduciary duty, though an act of fraud within the meaning of the statute, [is] coupled with the additional findings that the defendant devised a scheme to defraud and did so with specific intent to defraud." *United States v. Goss,* 650 F.2d 1336, 1346 (5th Cir.1981).

Gaspard's main contention is that although he may well have breached a fiduciary duty to Baroid in operating SSOG and Ed's Tank Cleaning, the evidence was insufficient to show that he intended to conceal or misrepresent his involvement with SSOG or Ed's Tank Cleaning. Instead, Gaspard contends, the evidence shows that Baroid officials knew of his involvement with SSOG and Ed's Tank Cleaning and that Baroid gave tacit, if not explicit, approval.

▆▆▆ In reviewing the sufficiency of the evidence, this Court is to determine whether, considering the evidence in the light most favorable to the government, "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc). Further, the jury may infer an intent to defraud from all the facts and circumstances surrounding the transaction. *United*

States v. O'Keefe, 722 F.2d 1175, 1181 (5th Cir.1983). An examination of the record reveals more than adequate evidence to support the jury's determination regarding Gaspard's ownership of SSOG on this standard. Baroid's work required a great amount of diesel. Gaspard served as a district operating supervisor until his termination on November 12, 1982. From January 1981 to October 1982, Gaspard purchased diesel for Baroid from Gaspard's own company (SSOG). The testimony at trial indicated that Gaspard would buy diesel in the name of SSOG, have it delivered to Baroid's own tanks, and then sell it (again in the name of SSOG) to Baroid at a profit. *See* Rec.Vol. IV, at 183; Vol. V, at 301; Vol. IV, at 122; Vol. V at 360. By the admission of Gaspard's son, SSOG had little or no physical assets; it had no fuel tanks, hoses, or trucks. Rec.Vol. V, at 301. The jury also had before it evidence showing that Gaspard had failed to obtain company permission to sell fuel to N L Baroid. When initially confronted with his ownership of SSOG, Gaspard stated that he had received such authority in a letter from Baroid supervisor Tom Parker, but was unable to produce the letter.[3] Rec.Vol. III at 8–9. While Gaspard contends that his supervisors knew of his ownership of SSOG, this testimony was impugned by convincing evidence that Gaspard had paid or offered "kickbacks" to a number of company supervisors.[4] Furthermore, these supervisors were only Gaspard's immediate supervisors in the area. On the other hand, Robert E. Killion, regional manager for Baroid and Gaspard's highest-ranking supervisor to testify, stated that he had neither given permission to Gaspard to sell diesel to Baroid nor had any knowledge of

---

**3.** A different letter, signed by a Baroid district manager, Travis Kieffer, stated that Gaspard's ownership of SSOG was known to some supervisors, but the letter was of questionable authenticity. *See* Rec.Vol. V at 273–75.

**4.** Gaspard's immediate supervisor, Woodrow Wilson, testified Gaspard gave him a check for a kickback. Rec.Vol. IV at 148–50; Rec.Vol. III at 12. Gaspard also offered a kickback to supervisor Travis Kieffer. Rec.Vol. V at 273. District

Manager Thomas Parker stated that he had never given Gaspard permission to sell diesel to Baroid and had no direct knowledge of Gaspard's sales to Baroid through SSOG. Rec.Vol. IV at 134, 139. Operations Manager Dayton King, whose office was in Lafayette, testified that he had "heard" that Gaspard was selling diesel to Baroid but at no time granted permission for Gaspard to do so. Rec.Vol. V at 315–16.

Gaspard's ownership of SSOG. Rec.Vol. V at 370–71. A fair reading of the record indicates that, while some of the local supervisors (tainted or otherwise) may have known of Gaspard's activities, there is no indication in the record that any of the supervisors outside of the immediate area had such knowledge or gave such consent. Finally, when Baroid did find out about Gaspard's ownership of SSOG, it did not react as a company "which had known all along" but instead moved quickly to terminate Gaspard. *See* Rec.Vol. III at 12.

There is also more than adequate evidence to uphold the jury's convictions on Counts VI through X (Ed's Tank Cleaning) and XV through XVI (concrete pouring). Gaspard used Baroid employees (often on Baroid's time) to clean tanks with Baroid equipment. He then submitted bills to Baroid for the services as if they had been performed by an independent contractor. Baroid investigator William Edwards testified that Gaspard told him that he had stopped Ed's Tank Cleaning "because he [Gaspard] felt that he was doing something wrong." Rec.Vol. III at 10. As for the concrete pouring counts, the evidence demonstrated that Baroid had paid for the concrete poured at the homes of Gaspard's relatives and that Gaspard had attempted to cover up at least one of these payments by repaying the cement contractor after the investigation had begun. Rec.Vol. IV at 217–19, 236.

III. *Improper Jury Argument*

Gaspard challenges three statements made by the prosecutor during closing argument. Since Gaspard failed to object, this Court reviews the statements under the "plain error" standard, that is, whether any error that may have been committed affected the substantial rights of the defendant. *See* Fed.R.Crim.P. 52(b); *United States v. Garza*, 608 F.2d 659, 665 (5th Cir.1979).

The third statement challenged is the only one that merits consideration. This third statement by the prosecutor related to a letter, allegedly signed by Travis Kieffer, one of Gaspard's superiors. The letter acknowledged that Gaspard was selling diesel to Baroid through SSOG. Rec.Vol. V at 299–300. As it was noted earlier, the letter, found two or three days before trial by Gaspard's son, was of somewhat questionable authenticity. *See* note 3 *supra.* Arguing this point to the jury, the prosecutor contended: "[The letter] is a paste up. This is a phony. It's a fraud ... Well, I think I was wrong because now there's a fourth scheme, a fourth fraud, and that is this bogus letter, the fourth scheme[.] [B]ut now there's a new victim. And who's the victim now? I submit to you, ladies and gentlemen, you are." Defendant's Brief at 35–36.

■■ Although this statement is objectionable,[5] it does not amount to plain error in the context of the case at bar. The statement does not indicate that the government was indeed charging Gaspard with a fourth fraud nor did the prosecutor imply that he had some special knowledge that Gaspard had committed an additional crime. *Cf. United States v. McPhee*, 731 F.2d 1150, 1152–1153 (5th Cir.1984) (argument improper where prosecutor implied he had special knowledge that defendant committed additional crimes). Further, the evidence particularly with regard to Counts VI through X and XV through XVI is strong such that the argument did not prejudice Gaspard's right to a fair trial. *See id.* at 1152.

IV. *Admission of Evidence*

■■ Gaspard challenges the introduction of a summary and chart into evidence and contends that its introduction is reversible error. The chart served as an aid to the testimony of FBI agent Owen Odom, who summarized evidence previously intro-

5. At oral argument in the instant appeal, the Court urged the government's counsel to take action so that statements such as the one here— which puts the jury in the role of the victim— are not made. The Court's ruling here that such argument does not amount to plain error does not condone such appeals to the jury.

duced through other witnesses. Rec.Vol. IV at 245–52. While the district court may have erred in admitting the chart into evidence or in failing to give a cautionary instruction, *see* J. Weinstein, *Evidence* ¶ 1006[07] (1983), any error that may have been committed is not reversible. Agent Odom's testimony concerned the magnitude of Baroid's loss on each of the three sets of counts. *See* Rec.Vol. IV at 247–50. The precise magnitude of the loss is not crucial, and the evidence is overwhelming that Baroid suffered a loss on each of the three sets of counts of the indictment.[6]

## V. *Conclusion*

The Court has examined Gaspard's other grounds of error and finds that they do not constitute reversible error. Accordingly, the judgment of the district court is

AFFIRMED.

---

**6.** Gaspard also contends on this appeal that the admission of two other charts constitutes reversible error. These charts illustrate Baroid's invoice processing and SSOG's purchase and sales. Gaspard's counsel failed to object. This Court reviews the admission of the charts on the "plain error" standard. *United States v. La-Coste,* 721 F.2d 984, 988 (5th Cir.1983). No such error was committed.