**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gabriel De Jesus CARDENAS,
Defendant-Appellant.**

No. 85–1299.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1985.

---

Michael Tarre, Coral Gables, Fla., for defendant-appellant.

James A. Rolfe, U.S. Atty., Fort Worth, Tex., James T. Jacks, Lynn Hastings, Asst. U.S. Attys., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Gabriel De Jesus Cardenas was convicted by a jury of three counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). After the jury returned its verdict, the defendant raised (1) a motion for new trial based on prosecutorial misconduct during trial and (2) a motion for acquittal. The district court granted the motion for acquittal, holding that there was insufficient evidence to support the jury's verdict. On the Government's appeal, this Court reversed the district court's judgment of acquittal and remanded the case to the district court to reinstate the jury's verdict and to consider the defendant's motion for new trial. On remand, the district court reinstated the jury's verdict and denied the motion for new trial. Cardenas appeals, arguing that the district court erred in failing to grant a new trial based on prosecutorial misconduct. This Court affirms.

## I. BACKGROUND

The facts are fully detailed in the opinion by this Court on the first appeal. *United*

*States v. Cardenas*, 748 F.2d 1015 (5th Cir.1984). We will briefly summarize these facts.

In the early part of 1983, the Federal Bureau of Investigation (FBI) received information that Paul Alan Van Riessen, who was charged in Oklahoma with conspiracy to import and distribute marijuana, was living in Texas. The FBI's investigation led to a Dallas Cadillac dealer, who told FBI agents that Van Riessen, along with a woman named Eula Mae Fulton, had recently purchased a red 1983 Cadillac El Dorado. The agents also learned that the car was being repaired at the dealership. In an effort to locate Van Riessen, the FBI began surveillance of the red El Dorado after Fulton picked up the car at the dealership on March 10, 1983. At approximately 8:15 p.m., Fulton drove the car to a house located in Rowlett, Texas, which Fulton and another woman had rented earlier.

At approximately 9:30 a.m. on the next day, March 11, Fulton left the residence, driving the red Cadillac. The car was not followed since Van Riessen was not in the car. Later that morning, however, Fulton was again observed driving the car in the area of the residence. The defendant Cardenas was riding in the car with Fulton. Fulton did not stop at the Rowlett residence, but instead drove Cardenas to a small shopping center, where Cardenas exited the car. Cardenas browsed momentarily through a magazine rack at a grocery store, left the grocery store, and then went to a nearby intersection where he appeared to be waiting for someone.

After leaving Cardenas at the grocery store, Fulton returned to the Rowlett residence, picked up another man (who was not identified other than he was not Van Riessen), and drove the man to a restaurant near the intersection where Cardenas was

waiting. The man appeared to be watching Cardenas.

Fulton next returned to where Cardenas [1] was waiting and picked him up. Fulton then went to an apartment complex and picked up another white male. The three occupants of the car then drove to the Doubletree Inn in Dallas. They arrived at the hotel at 2:40 p.m. on March 11. Van Riessen and another man checked into that hotel at approximately the same time.[2]

The next morning, on March 12, the FBI began a constant surveillance of Van Riessen's room at the Doubletree Inn at 8:00 o'clock. From 8:00 to 11:30 a.m., the defendant Cardenas was not observed leaving or entering Van Riessen's room. At 11:30 a.m., FBI agents entered the room where they found and arrested Van Riessen, Fulton, and Cardenas. The agents also found a considerable amount of cocaine, methaqualone tablets, and methamphetamine. The agents also discovered a shoe and soft drink cans with compartments for hiding illegal substances. No drugs, however, were physically found on Cardenas' person. Shortly after the FBI agents' arrival in the room, two other men, Norman Carey and Christopher Gandsey, arrived after one of them telephoned Van Riessen's room and was told by an FBI agent to come up to the room. Carey carried two suitcases, both of which were empty except for a few small items. Carey denied that he had come there to purchase illegal substances and testified at trial that he had come to the room only to collect a debt owed to him by his cousin, Van Riessen.

At Cardenas' trial, other evidence found in the hotel room was admitted. A ticket and boarding pass in Cardenas' name was admitted showing that Cardenas had been ticketed on Pan Am flight 575 at 8:00 a.m. on March 11 from Miami to Dallas. Evidence at trial also indicated that Fulton's

1. Although the man Fulton picked up at this point was not positively identified, the jury could have reasonably inferred that it was Cardenas. *Cardenas,* 748 F.2d at 1017.

2. The Court on the first appeal noted the coincidence of the arrival of the three occupants of the El Dorado and Van Riessen's registration.

The Court noted that, from this evidence, the jury could reasonably infer that the two men in the El Dorado were Van Riessen and Cardenas and that Cardenas was the man accompanying Van Riessen at registration. *See Cardenas,* 748 F.2d at 1017 n. 1.

purse, which was taken into custody at the hotel room, contained a note for a "Pan Am flight" and a number which appeared to read 575. From this evidence, the jury could reasonably infer that Fulton had picked up Cardenas at the airport on March 11, the day before the arrests. A brown attache case was also seized in the hotel room. The papers in the briefcase included a Miami telephone number for "Red," a name by which Cardenas was known. Telephone records introduced at trial indicated several calls from the Rowlett residence to the Miami number and several calls from the Miami number attributed to Cardenas to Colombia and Venezuela. These calls were placed during the period between February 28 and March 10, 1983, the days immediately preceding Cardenas' arrival in Dallas.

As noted, following the jury's verdict the district court granted a judgment of acquittal on the grounds that the Government did not present sufficient evidence to establish that Cardenas constructively possessed the controlled substances. *Cardenas*, 748 F.2d at 1019. On appeal, this Court reversed and remanded, noting that the evidence of constructive possession "strongly and undoubtedly supports [Cardenas'] conviction." 748 F.2d at 1022.[3] The Court, however, specifically reserved the question whether Cardenas was entitled to a new trial on the basis of prosecutorial misconduct. *Id.* at 1023 n. 4. On remand, the district court found that, " 'taken as a whole in the context of the entire case,' the argument and evidence complained of, even if improper, did not 'prejudicially [affect] substantial rights of the Defendant.' " Record Vol. I at 178 (citing *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir.1977)).

## II. THE MERITS

Defendant Cardenas contends that alleged prosecutorial misconduct during trial was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir.1977) (citation omitted), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978). Cardenas concludes that a new trial is warranted. The decision as to whether to grant a mistrial on the basis of alleged prosecutorial misconduct lies within the discretion of the trial court. *United States v. Granville*, 716 F.2d 819, 821 (11th Cir.1983) (per curiam) (citing Fifth Circuit precedent). In evaluating allegations of prosecutorial misconduct, the "test ... is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendant[]." *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir.1981). "[A] conviction should not be set aside if the prosecutor's conduct ... did not in fact contribute to the guilty verdict and was, therefore, legally harmless." *United States v. Beckett*, 706 F.2d 519, 520 (5th Cir.1983). Bearing in mind the trial court's familiarity with the case and opportunity to observe the events of trial as they unfold, the Court "give[s] considerable weight to the trial judge's assessment of the prejudicial effect of the remark." *United States v. Nickerson*, 669 F.2d 1016, 1020 (5th Cir.1982). A prosecutor's statement "must be viewed in context." *United States v. Young*, — U.S. ——, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Consequently, this Court has carefully reexamined the record in full in order to examine Cardenas' contentions "in the context of the entire case." *Corona*, 551 F.2d at 1388.

■ Cardenas contends first that a new trial is warranted because the prosecutor

---

**3.** In arriving at this conclusion, the Court noted that its "conclusion [was] not based on any one single factor, but after a careful consideration of all the evidence together." 748 F.2d at 1020. The Court noted (1) Cardenas' arrival in Dallas where he was picked up by Fulton on the day before the arrests; (2) the telephone calls between the Rowlett residence and the Miami number and between the Miami number and South America; (3) Cardenas' suspicious activity at the shopping center; (4) Cardenas three-and-a-half hour presence in Van Riessen's hotel room; (5) the amount of drugs in the rooms and their presence in plain view; and (6) Carey's arrival in the room with two empty suitcases. In sum, "the evidence against Cardenas clearly and undoubtedly support[ed] his conviction." *Id.* at 1022.

unduly emphasized in his opening and closing statements that, prior to Cardenas' arrest, Paul Alan Van Riessen was being sought by the FBI as a "drug violator." *See* Record Vol. IV at 40, 44; Vol. V at 439–41. Defendant Cardenas concedes that an examination of Van Riessen's fugitive status was necessary to explain the actions of the FBI agents involved in the investigation leading to Cardenas' arrest, but contends that there was no reason to describe Van Riessen as a "drug violator." Cardenas argues that the Government was, in essence, attempting to try Cardenas on an impermissible theory of guilt by association.

Our examination of the record fails to support Cardenas' contention. In determining whether improper argument affects a defendant's substantial rights, the Court should consider (1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the defendant's guilt. *United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir.1984). We note first Cardenas' concession that the Government could refer to Van Riessen's fugitive status. Any additional prejudice (which would likely be minimal) resulting from Van Riessen's description as being a "drug fugitive" was greatly minimized by the trial court's instructions. The trial court carefully instructed the jurors that they should not concern themselves with the guilt or innocence of those not at trial. Record Vol. V at 473.[4] Moreover, the Government did not attempt to attribute any responsibility for Van Riessen's fugitive status to Cardenas. We also note that this Court previously concluded that the

evidence of Cardenas' constructive possession "clearly and undoubtedly support[ed] his conviction." *Cardenas*, 748 F.2d at 1022. Our own separate examination has yielded an identical conclusion. Thus, applying *McPhee*, we see little merit to Cardenas' contention.

■ Likewise, Cardenas attacks the prosecutor's remark in his opening statement that Cardenas "in fact is a native of Colombia." Record Vol. IV at 42. Little prejudice affecting the defendant's substantial rights can be attributed to this remark. Defense counsel, during closing argument, also stated that Cardenas was born in Colombia. Record Vol. V at 455.[5] Moreover, evidence introduced at trial indicated that Cardenas made several telephone calls to Colombia immediately prior to his trip to Dallas. This connection to Colombia was considered by this Court on the first appeal to be evidence indicating Cardenas' participation in a drug distribution scheme. *Cardenas*, 748 F.2d at 1021. In light of the admission of this evidence, which has not been challenged before this Court, it cannot be said that the prosecutor's brief reference warrants granting Cardenas a new trial.[6]

■ Cardenas also attacks the prosecutor's action in questioning witness Norman Carey. As noted above, Carey came to Van Riessen's hotel room after the agents had arrested Van Riessen, Fulton, and Cardenas. Carey carried two empty pieces of luggage. On direct examination, Carey testified that he had come only to collect a debt from Van Riessen. The Government's counsel asked Carey if he had previously been arrested for drug transactions.

---

**4.** Indeed, the trial court also instructed the jury, "You are instructed that mere presence in the area where the narcotics are discovered or mere association with the person or persons who does control the drugs or the area where they are located is not sufficient to support a finding of possession." Record Vol. V at 469.

**5.** Indeed, Cardenas' counsel used this fact as a means of explaining the telephone calls to Colombia. Counsel argued, "For example, they tried to infer he must have been involved in dope because he made a phone call to Columbia

[sic]. He is a United States citizen who was born in Columbia [sic]." Record Vol. V at 455.

**6.** Cardenas also challenges the prosecution's introduction of the testimony of Government witness DEA Agent Seay that "[c]ocaine mainly comes from Columbia [sic]...." Record Vol. V at 316. Cardenas did not object to this testimony, and Cardenas concedes that this Court is limited to "plain error" review. No such error is presented. *See United States v. Nichols*, 750 F.2d 1260, 1264 (5th Cir.1985).

Record Vol. V at 366. The district court granted Cardenas' motion to strike the question. While the prosecution's action in questioning Carey might have otherwise led to concern, the district court's quick action in granting the defendant's motion to strike the question cured any possible prejudicial effect. *See United States v. Lichenstein,* 610 F.2d 1272, 1282 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).

 Cardenas also attacks the prosecutor's closing arguments and contends that the prosecutor injected extrinsic and prejudicial matter which had no factual basis. Specifically, Cardenas argues that the prosecutor's statement that Van Riessen asked Fulton to pick up Cardenas at the airport when he arrived from Miami was unsupported by the evidence at trial. This Court, however, specifically recognized on the first appeal that the jury could reasonably draw such an inference. *Cardenas,* 748 F.2d at 1021. Thus, we see no merit to Cardenas' contention. Cardenas also contends that the prosecution overstepped its bounds in arguing that a drug transaction was planned at the Rowlett house. The district court, however, sustained Cardenas' objection and gave a prompt cautionary instruction to cure any possible prejudice. *See United States v. Shackelford,* 709 F.2d 911, 913–14 (5th Cir.) (per curiam), *cert. denied,* 464 U.S. 899, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983); *United States v. Nickerson,* 669 F.2d at 1020. Finally, Cardenas challenges the prosecutor's closing, "[T]hank God these drugs were picked up by the agents." Record Vol. V at 464. While this brief statement was arguably impermissible as an attempt to bolster the agents' testimony at trial, *see United States v. Brown,* 451 F.2d 1231, 1236 (5th Cir.1971), no objection was made, and a holding of plain error could not be sustained on this appeal from such a brief statement. *See United States v. Zielie,* 734 F.2d 1447, 1460–61 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985).

Finally, this Court has also considered the cumulative effect of counsel's alleged errors. After this Court's thorough examination of the record, we cannot agree with Cardenas' argument that the alleged prosecutorial misconduct was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Blevins,* 555 F.2d at 1240. Rather, the trial court tried this case carefully, giving cautionary instructions when needed. Further, we find that the alleged misconduct had no significant effect on the issue of whether Cardenas had possession of the drugs, the only substantial issue at trial. Thus, we concur with the trial court's considered finding that the circumstances here do not warrant a new trial.

The judgment of conviction by the district court, therefore, is

AFFIRMED.