IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-8383

_____

UNITED STATES  OF AMERICA,

PLAINTIFF-APPELLEE,

v.

TOMAS BARKSDALE-CONTRERAS, LUIS MANUEL GONZALES-COPADO, FELIPE
CONTRERAS, JR., SALVADOR COPADO, JR., OSCAR GONZALEZ-MARCELINO,
ARTURO GONZALEZ, JR. AND ARMANDO BAEZA-DE ALBA,

DEFENDANTS-APPELLANTS.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS
_____

(September 1, 1992)

Before REYNALDO G. GARZA, DAVIS and BARKSDALE, Circuit Judges.

GARZA, REYNALDO G., Circuit Judge:

Defendants appeal their convictions from the Western District
of Texas on kidnapping, conspiracy and misprision charges.  Finding
no error, we affirm.

On December 9, 1990, Jose Gaona (Gaona) was intercepted at
gunpoint near his home in Acuna, Mexico by defendants Luis Manuel
Gonzalez-Copado  (Gonzalez-Copado)  and  Armando  Baeza-De  Alba
(Baeza).  After being struck, Gaona was driven to the International

bridge at Del Rio, Texas. Still at gunpoint, Gaona was told to keep quiet as they all crossed the border. Upon transporting Gaona into Texas, the codefendants demanded $100,000 in ransom and then proceeded to codefendant Tomas Barksdale-Contreras' (Barksdale) home. Barksdale joined the group and they all proceeded to Lake Amistad, Texas. On the way to the lake, Gonzalez-Copado slashed Gaona's back five or six times with a knife. At the lake, Gonzalez-Copado threatened to kill Gaona while holding a pistol to his head. Gaona was then driven to a one room apartment at a used car lot and placed in a closet. Gonzalez-Copado again struck and kicked Gaona. Appellant Felipe Contreras, Jr. (Contreras) had joined the group by this time and had also struck Gaona. The ransom demand was then raised to $400,000. Gonzalez-Copado phoned Gaona's home and, at gunpoint, the victim was forced to relay the demands to his wife repeatedly throughout the day. In the interim, appellants Arturo Gonzalez, Jr. (Gonzalez) and Oscar Gonzalez-Marcelino (Marcelino) had joined the others. On two occasions Gonzalez kicked the victim and Marcelino stated that Gaona should be killed if his wife did not come up with the ransom. At around 6:00 P.M., Gaona was taken out to a shed at a nearby ranch and was hung by the neck for about seven seconds. The last codefendant, Salvador Copado, Jr. (Copado) and Gonzalez arrived and stood guard over Gaona. Copado, armed with a gun, beat the victim with a rope, threatened him with a stone and removed his shoes to prevent escape.

In the evening the kidnappers called Gaona's home and told a

friend of his wife that they would kill Gaona if the money was not forthcoming.  Another ransom demand and death threat were made to the victim's uncle later that evening.  Gaona was taken to a motel for the evening and present were Gonzalez-Copado, Barksdale, Baeza and Contreras.  Baeza and Contreras, armed, stood guard through the night.

On the morning of December 10, Gaona was transferred to a house in Del Rio, Texas.  He was subsequently transferred to various other locations.  This continued through the next day, until federal officers located Gaona being guarded by Baeza just off the lake.  Gaona was held captive for fifty-five hours.

## Analysis

Appellant Baeza now questions federal jurisdiction because the indictment failed to track the kidnapping statute exactly.  18 U.S.C. § 1201(a).[1]  The wording in the indictment charged that the appellants "did knowingly and unlawfully seize, confine, kidnap, abduct, and carry away and hold for ransom a person ... after he was willfully transported in foreign commerce ...."  The indictment mistakenly asserted that the kidnapping took place after the victim was transported in foreign commerce.  Baeza does not explain why he failed to raise this claim at the district level nor does he point

---

[1]     18 U.S.C. § 1201 provides in relevant part:

     (a)  Whoever unlawfully seizes, confines, inveigles decoys, kidnaps, abducts, or carries away and holds for ransom  or reward or otherwise any person, except in the case of a    minor by  the parent thereof, when:

          (1) the person is willfully transported in interstate or foreign commerce;

3

to any prejudice because of the wording of the indictment. The test of the sufficiency of an indictment is whether it charges all of the elements of the offense so that an accused may prepare his defense and be protected against double jeopardy. Hamling v. United States, 418 U.S. 87, 117 (1974). When the sufficiency of an indictment is first challenged at the appellate level, the language is liberally construed and reversible error will not be found unless the wording cannot by reasonable construction charge a crime. United States v. De La Rosa, 911 F.2d 985, 985-89 (5th Cir. 1990), cert. denied, 114 L.Ed.2d 726 (1991); United States v. Gaspard, 744 F.2d 438, 439 n.2 (5th Cir. 1984), cert. denied, 469 U.S. 1217 (1985); United States v. Cauble, 706 F.2d 1322, 1333 n.25 (5th Cir. 1983), cert. denied, 465 U.S. 1005 (1984).[2] Moreover, this court has held "that an indictment need not precisely track the language of the statute; it is sufficient if it informs the defendant of every element of the offense charged." United States v. Hernandez, 891 F.2d 521, 524 (5th Cir. 1989), cert. denied, 495 U.S. 909 (1990), (citing United States v. Boyd, 885 F.2d 246 (5th Cir. 1989)). We find the indictment sufficient.

Appellants challenge the sufficiency of evidence as well as the admission of certain testimony. Deference to the district court's admission of evidence is well settled. The verdict must be affirmed if the court concludes that any reasonable trier of fact could have found that the evidence established guilt beyond a

---

[2] We note that the jury charge did include instructions that the kidnapping charge required the finding that it preceded the transportation of Gaona in foreign commerce.

4

reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>United States v. Anderson</u>, 933 F.2d 1261, 1274 (5th Cir. 1991).

Gonzalez-Copado claims that there was insufficient evidence against him. The record contradicts this and reveals overwhelming evidence that the appellant was not only guilty of kidnapping but was also the moving force behind the crime. First, he abducted Gaona at gunpoint and forced Gaona to communicate the ransom demands. He personally beat and slashed him on several occasions and assisted in temporarily hanging Gaona at the shed. This evidence is plainly sufficient.

Appellants Barksdale and Contreras maintain that their convictions cannot stand because their involvement began after Gaona had been transported in foreign commerce. Barksdale adds that there was no proof of his knowledge that the abduction had occurred in Mexico. The arguments lack merit. "[I]t is settled law, however, that one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of conspirators, made after the formation and in furtherance of the conspiracy." <u>United States v. Cintolo</u>, 818 F.2d 980, (1st Cir.), <u>cert. denied</u>, 484 U.S. 913 (1987). "[A] conspiracy is like a train[;] when a party knowingly steps aboard he is part of the crew and accepts responsibility for the existing freight [it is already carrying]." <u>United States v. Baines</u>, 812 F.2d 41, 42 (1st Cir. 1987). "With [a] conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all

5

as declarations or acts of co-conspirators in aid of the conspiracy." United States v. United States Gypsum Co., 333 U.S. 364, 393, 68 S. Ct. 525, 541, 92 L.Ed. 7461 (1948).

The entry into the conspiracy of Barksdale and Contreras after the movement across the border does not bar holding them responsible for the prior acts. Proof of transportation of a kidnapped victim in interstate or foreign commerce is necessary to establish federal jurisdiction. Knowledge by the kidnappers of the crossing of boundaries is not a necessary element of the offense. United States v. Bankston, 603 F.2d 528, 532 (5th Cir. 1979).

Gonzalez and Copado seek review of the credibility of evidence regarding their entry into the United States with a gun without detection. Determining the weight and credibility of evidence is within the sole province of the jury. United States v. Pena, 949 F.2d 751, 756 (5th Cir. 1991). An appellate court will not supplant the jury's determination of credibility with that of its own. United States v. Barron, 707 F.2d 125, 127 (5th Cir. 1983). A review of the record reveals that the findings of the jury were not unreasonable.

Marcelino argues that he should not have been found guilty of misprision after he was acquitted of kidnapping and conspiracy. He contends that hearsay allowed by the trial judge under the coconspirator exception cannot be used if he is found innocent of the conspiracy charges. An individual's acquittal of the underlying crimes does not prevent him from being convicted of misprision. See United States v. Davila, 698 F.2d 715, 720 (5th

6

Cir. 1983). Marcelino is still guilty of the affirmative act of concealment of the conspiracy. Federal Rule of Evidence 801 (d)(2)(A) provides that "a statement by a coconspirator of a party during the course and in futherance of the conspiracy" is not hearsay. The evidence does not become inadmissible because of the acquittal of the defendant on the charge of conspiracy. The standard used by the trial judge in determining the existence of a conspiracy for purposes of admitting the statement of a coconspirator is that of a preponderance of the evidence; the jury must reach the higher standard of beyond a reasonable doubt. Bourjaily v. United States, 483 U.S. 171, 176 (1987). Thus the trial judge only has to find that existence of the conspiracy was more likely than not. Indeed, the admission of evidence is valid even in the absence of a conspiracy charge, as long as the proof showed a joint venture. United States v. Samientio-Rozo, 676 F.2d 146, 149 (5th Cir. 1982). Additionally, the confrontation clause of the Sixth Amendment is not violated here. The fact that the coappellants chose not to testify does not negate the admissibility of their out of court statements. Bourjaily, 483 U.S. at 181-184; Delaney v. United States, 263 U.S. 586, 590 (1924).

Gaona also testified that he himself heard Marcelino state that Gaona should be killed if the ransom was not paid. Gaona had met Marcelino before the kidnapping and could identify his voice even though the victim was held in a closet. This is not hearsay and is allowable as a party-opponent admission. Fed.R.Evid. 801(d)(2)(A).

7

The issues raised regarding misprision are also meritless.  We find evidence of concealment of the crime when the appellants made false statements to police while participating in the kidnapping. United States v. Hughes, 566 F.2d 674, 675 (9th Cir. 1977).

Baeza asserts that his misprision conviction was in violation of his Fifth Amendment privilege against self-incrimination.  He did not, however, present any argument and has thus waived this point.  See Fed.R.App.P. 28(a)(4) (requiring argument of issue in appellant's brief).  Aside from presenting no argument, Baeza's claim fails because of its untimeliness.  The privilege is not self-executing and the failure to assert it in a timely fashion precludes seeking its protection for the first time on appeal. Minnesota v. Murphy, 465 U.S. 420, 427-429 (1984); Roberts v. United States, 445 U.S. 552, 559 (1980); Garner v. United States, 424 U.S. 648, 653 (1976).

Appellants question the exclusion of impeachment testimony regarding Gaona and drug trafficking.  The trial judge granted the government's motion in limine preventing discussion of drug trafficking because it was seen as irrelevant to the kidnapping charge.  The district court stated that if the defense intended to bring the issue up later they should approach the bench so that relevancy could be weighed at that time.  The trial judge stated that the defense could use any theory as long as there was evidence to support it.  Neither evidence nor witnesses were ever produced to support this theory.  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose

8

reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). This court regards limits placed upon the scope or extent of cross-examination to be a matter committed to the sound discretion of the trial judge, and the decision is reviewed under a standard of clear abuse of discretion. United States v. Duncan, 919 F.2d 981, 988-989 (5th Cir. 1990), cert. denied, 111 S.Ct. 2036 (1991). We find no abuse here.

Appellants also challenge two references to drug dealing made by witnesses. The trial judge quickly addressed the jury and stated that those allegations should not be considered. We find no prejudice against the appellants. The jury was admonished swiftly and firmly and the circumstances surrounding the kidnapping were inflammatory on their own. The court presumes that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). We find no reversible error.

Appellants also allege error in the trial judge's instructions to the jury that no inferences should be made regarding any appellants' silence. The "no" was apparently missing from the transcript. The government has assured us that "no" was actually said and that the court stenographer has stated that indeed it was

9

a typographical error.  We observe that counsel for appellants, when directly questioned about the matter, did not unequivocally contradict the government's assertions that the error was merely typographical.[3]  Furthermore, there was no objection at the time the instruction was given despite careful questioning as to the presence of any objections by the district court.  We are satisfied that the matter was a typographical error and thus reject any notions to the contrary.

Challenges to various sentencing calculations and several other issues have been raised.  After careful review of the law and the record in this case, we conclude these matters are entirely without merit.

For the reasons discussed above, the convictions and sentences of appellants are in all respects

AFFIRMED.

---

[3]  Counsel stated that he "tended to agree"  that the matter was merely the result of a typograpical error.