**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 93-7734
_____


THE UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DOUGLAS RAY STEVENS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(November 3, 1994)

Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Douglas Ray Stevens appeals his conviction for possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). We vacate and remand.

I.

In late 1992, Douglas Ray Stevens, then known as Douglas Ray Williams, was under investigation by the Texas Department of Public Safety for illegal gaming operations. As part of this investigation, law enforcement officers obtained a warrant authorizing them to search Stevens' home for evidence of bookmaking. To execute this warrant, a team of state and local officers borrowed a flower delivery truck and came to Stevens' door carrying poinsettias. When Stevens and his wife answered the door,

the officers entered peacefully through the open door, informed Stevens that they were police officers and that they intended to search his house, which they proceeded to do.

During this search, Officer Raul Tovar found two handguns, both Smith & Wesson .38 caliber revolvers, one chrome and one blued. Tovar found the chrome revolver in a locked briefcase that Stevens opened for him. This handgun was unloaded and bore the serial number J555813. Stevens told Officer Tovar that he had been given this gun to settle a gambling debt, so Tovar seized the chrome revolver as evidence of Stevens' gambling operation. Officer Tovar discovered the blued revolver inside a shoe box in a closet. The blued handgun was loaded and stamped "CCPD," signifying that at one time it had belonged to the Corpus Christi Police Department. The officers had no reason to connect the blued CCPD revolver to possible gambling violations so they photographed this handgun but did not seize it.

Some time later, a fire occurred in the Stevens home and the blued CCPD revolver was destroyed. While investigating this fire, the Texas officers discovered Stevens' true identity and learned that he had a prior felony conviction. Stevens was then charged with knowing possession of the chrome revolver bearing serial number J555813. He was not charged with possession of the blued CCPD revolver.

Several references were made to the blued CCPD revolver during the trial. Officer Tovar testified on cross-examination during the Government's case that he had found another handgun in a closet, that he was not sure who owned it and that it was not seized

2

because it was not evidence of gambling.

The defense began its case by calling Stevens himself. Stevens testified that the chrome revolver and the briefcase in which it was stored belonged to his wife. He explained that they had only been married for two months at the time of the search and that he was not aware that among his wife's belongings was a briefcase containing a revolver. The Government asked Stevens on cross-examination whether he knew about the blued CCPD revolver in the closet, and whether it belonged to him. Stevens denied both knowledge and ownership of this gun as well.

Stevens' wife, Martha, also testified. She affirmed that she was indeed the owner of both the chrome revolver and the briefcase, and that her husband had not known of them. The Government, on cross-examination, attempted to impeach Martha Stevens' testimony that she owned the chrome revolver. The prosecution showed her the picture of the blued CCPD revolver and asked her if this was the gun that was in the briefcase. She responded that she was not familiar with guns but that the gun in the photograph might be hers. The Government later asked her a series of questions about who owned any other guns found in the house, and specifically who owned the gun found in the shoe box in a closet. She replied that she did not own any other guns, and that she had not known that any other guns had been found.

After the defense rested, the Government recalled Officer Tovar to give rebuttal testimony. Tovar identified the blued revolver in the photograph as "a service revolver, a Smith & Wesson, .38 caliber." He stated that he had found this revolver in

3

Stevens' house, in a box in the hallway, and that he had not kept it as evidence. The Government then offered the photograph of the blued revolver into evidence, causing the following exchange:

```
GOVERNMENT:     Government would offer Exhibit 9 --
DEFENSE:        No objection.
GOVERNMENT:     -- into evidence.
THE COURT:      It's admitted.
GOVERNMENT:     No further questions.
THE COURT:      Not only has it apparently not been admitted,
                but the defendant is not on trial for that
                     weapon.  You may continue.
```

Counsel's closing arguments focused almost entirely on the chrome revolver the officers found in the briefcase and whether Stevens or his wife owned that handgun. Counsel made only one reference to the blued CCPD revolver. The prosecutor explained that "[t]he only reason the Government has that in evidence is to the credibility of Mrs. Stevens."

After deliberating for several hours, the jury sent the judge a note that read:

Can we accept the picture of the CCPD gun as evidence of possession. Why didn't the police department confiscate both guns?

The judge proposed to counsel that he reply as follows:

With respect to your first question, you are to consider all the evidence in the record on the issues that have been presented. Whether and to what extent you accept that evidence as proof of the offense alleged is your choice.

With respect to your second question, I am not allowed to answer. If the reason was stated by a witness, it is in evidence. If it was not stated, then the reason is not in evidence. I cannot furnish testimony to you not already in evidence.

Stevens' attorney objected to the first paragraph of the answer, arguing that the jury was not asking whether they could use the photograph of the blued CCPD revolver to impeach Martha

4

Stevens' testimony, but whether they could use the photograph as evidence that Stevens had possessed the blued CCPD gun, and convict him for that possession. The judge disagreed and, after a lengthy discussion, decided to send his response as originally drafted. Shortly after receiving this reply, the jury found Stevens guilty.

II. Stevens argues that the district court erred by not responding to the jury's note with an instruction that (1) the photograph was admitted for the limited purpose of assessing Martha Stevens' credibility and (2) Stevens could not be convicted for possessing the blued revolver. He contends that, because jury misunderstood the role of the blued CCPD revolver in this case, he was convicted of possessing the blued CCPD revolver, rather than the chrome revolver charged in the indictment.

When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with "concrete accuracy." **United States v. Carter**, 491 F.2d 625, 634 (5th Cir. 1974); **Bollenbach v. United States**, 326 U.S. 607, 613 (1946). A trial judge, of course, enjoys wide latitude in deciding how to respond to such questions. **See United States v. Duvall**, 846 F.2d 966, 977 (5th Cir. 1988). When evaluating the adequacy of supplemental jury instructions, we ask whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it. **United States v. Natale**, 764 F.2d 1042, 1046 (5th Cir. 1985). In this case, the court's answer was not responsive to the jury's

5

question. Also, this answer did not make it clear to this jury that it could not convict Stevens for possessing the blued CCPD revolver.

As indicated above, several references were made during the trial to the blued CCPD revolver. The district court, in admitting the photographs of the blued revolver, made a very brief, unsolicited statement: "not only has it apparently not been admitted, but the defendant is not on trial for that weapon. You may continue." Defense counsel never requested a more complete limiting instruction defining the limited purpose of this evidence and we cannot fault the district court for failing to give one spontaneously. However, the absence of such an instruction lends credence to Stevens' argument that the district court misinterpreted the jury's question.

In light of the record, we are persuaded that the most obvious question on which the jury sought clarification was whether it could use the photograph of the blued revolver as evidence that Stevens had possessed that firearm and convict Stevens based on that possession. This is the most straightforward meaning of the first question standing alone: "Can we accept the picture of the CCPD gun as evidence of possession." The second question: "Why didn't the police department confiscate both guns?" lends support to this interpretation. If the jury thought Stevens was equally accountable for the possession of either handgun, they would not understand why the police allowed him to keep one and not the other.

We conclude therefore that the judge's answer to the jury's

question was not responsive and did not clear away the confusion and difficulty the jury had in deciding how to use the photograph of the blued CCPD revolver.  Because this confusion may well have caused the jury to find Stevens guilty of an offense not charged in the indictment, we must vacate this conviction and remand the case to the district court for further proceedings.[1]

VACATED and REMANDED.[2]

---

[1] Stevens also argues that the Texas officers violated 18 U.S.C. § 3109 (knock-and-announce rule) by entering his home through the flower delivery scheme.  Under long established Fifth Circuit precedent, this argument must fail. **See, e.g., United States v. DeFeis**, 530 F.2d 14, 15 (5th Cir.), **cert. denied**, 429 U.S. 830 (1976).

[2] Because we make no finding as to the sufficiency of the evidence in this case, our decision does not raise a double jeopardy bar to Stevens' retrial. **See United States v. Miller**, 952 F.2d 866, 870 (5th Cir.), **cert. denied**, 112 S.Ct. 3029 (1992); **United States v. Tateo**, 377 U.S. 463, 365 (1964).