IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-40208

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FERNANDO F. MARSHALL,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
No. 1:06-CR-0212-ALL

Before SMITH and PRADO, Circuit Judges, and LUDLUM, District Judge.[*]

LUDLUM, District Judge:[**]

A jury convicted Appellant Fernando Marshall ("Marshall") of eight counts of various narcotics trafficking offenses, including conspiracy to possess with intent to distribute, conspiracy to import, possession with intent to distribute, and importation of cocaine, heroin and methamphetamine. He appeals his convictions, challenging: (1) the sufficiency of the evidence to support his convictions; (2) the court's instructions given during voir dire and at the

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conclusion of the case; (3) the answers to two jury questions; and (4) the admission of extrinsic evidence. Finding no error, we affirm Marshall's convictions.

## I. FACTS AND PROCEEDINGS

On March 4, 2006 at 11:15 a.m., Marshall drove an extended cab Chevrolet Silverado pickup truck from the Republic of Mexico into the primary inspection station at the Gateway International Bridge Port of Entry in Brownsville, Texas. At the primary inspection station, Marshall declared he was a resident alien of the United States and had been in Mexico. Marshall also told the primary inspection agent that he, a professed mechanic, was in the process of purchasing the truck from its owner, who lived in Houston, Texas. The agent noticed Marshall was tightly clutching the steering wheel and acting extremely friendly with the agent. The agent inspected the truck's undercarriage and saw it recently had been sprayed with a thick layer of oil. He also noticed evidence of tampering on the gas tank bolts. Marshall was then referred to the secondary inspection area.

At the secondary inspection area, Marshall made a negative declaration. He told agents he had been in Mexico visiting his sick mother and was returning to Brownsville. According to Marshall, a friend of his named Arellano owned the truck. Marshall told the agents he picked up the truck earlier that morning from Arellano, who stayed in Mexico.

An agent noticed that the interior of the truck was recently cleaned, the carpet vacuumed, the glove box emptied of all items, and the key ring held a single ignition key and a religious artifact. The key ring appeared suspicious to the agents because of the lack of any house and mailbox keys. The agents also noticed the excessive amount of oil sprayed on the undercarriage, which emitted a strong smell and was dripping and pooling on the ground.

A narcotics detection canine was brought in to inspect the truck, but did not alert to the presence of any contraband. The agents then used a density detector, which registered a high density reading on one of the rear quarter panels of the truck. Upon further inspection, the agents discovered the taillight screws appeared tampered with and were recently painted. After removing the taillights, agents discovered a compartment within the wall of the truck. By probing the cavity with a drill, the agents extracted white powder, which field-tested positive for cocaine.

Agents retrieved a total of thirty-five packages of narcotics from the left and right rear quarter panels of the truck. Each bundle was in an air-sealed package, covered with a layer of mustard seed, a layer of soap, a layer of plastic wrap, a layer of duct tape, a layer of oil, and a final layer of plastic wrap, all designed to mask the odor of the narcotics. The thirty-five bundles consisted of eighteen bundles of cocaine, weighing 19.55 kilograms; eight bundles of methamphetamine, weighing 5.05 kilograms; and nine bundles of heroin, weighing 6.2 kilograms. The wholesale value of the drugs in Houston, Texas was $731,000, while the street value was $5,865,000.

At some point in time during the search of the truck and prior to Marshall's arrest, the agents discovered the existence of an outstanding arrest warrant for Marshall for the offense of unauthorized use of a motor vehicle. Marshall was arrested at 11:49 a.m. The agents found the narcotics at approximately 12:30 p.m. They contacted a duty agent, who arrived at the port of entry by 1:00 p.m.

Marshall was advised of his constitutional rights, waived those rights, and was subjected to custodial interrogation for approximately an hour-and-a-half. He gave several versions of his confession. The inconsistencies pertained to the name of the truck's owner, the purpose of his visit to Mexico, the place and time he retrieved the truck, and his instructions for the disposition of the truck.

Marshall, at some point, admitted he was paid to drive the truck into the United States. He also admitted he lied to the agents during the interrogation. He denied actual knowledge of the narcotics in the truck, but stated, "[B]ut I thought it was suspicious. Because [the owner] did not want to drive the truck, because he had problems before with Immigration relating to alien smuggling. In my, what do you call it, 6th sense, I knew something was suspicious."

## II. DISCUSSION

### A. Sufficiency of the Evidence

Marshall contends the evidence was insufficient to establish he knowingly committed the eight offenses of conviction. He claims the Government, at best, only proved he merely possessed the truck, not that he knew the drugs were hidden in a secret compartment in the truck. He further contends evidence of guilt was equipoised with evidence of innocence, and therefore, the convictions should be reversed.[1] The Government counters that the evidence was sufficient to prove Marshall had the requisite knowledge of the narcotics, which was established by evidence of his nervous demeanor and the numerous versions of his confession.

Because Marshall moved for a judgment of acquittal at the close of the Government's case, we review de novo the sufficiency of the evidence claims. See United States v. Leed, 981 F.2d 202, 205 (5th Cir. 1993). The standard of review for determining the sufficiency of the evidence is whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). The

---

[1] The indictment also charges Marshall with aiding and abetting as to the substantive offenses listed in Counts Two, Three, Four, Six, Seven, and Eight. The parties do not challenge the sufficiency of the evidence concerning the alternative aiding and abetting theory.

evidence is viewed in the light most favorable to the verdicts. Id. "The government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury's conclusion that the defendant is guilty beyond a reasonable doubt." United States v. Del Aguila-Reyes, 722 F.2d 155, 157 (5th Cir. 1983). The evidence need not "'exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . . A jury is free to choose among reasonable constructions of the evidence.'" United States v. Williams-Hendricks, 805 F.2d 496, 500 (5th Cir. 1986) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc) (footnote omitted)). However, should the evidence show equal or nearly equal circumstantial support of guilt and innocence, reversal is required. United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996).

To be found guilty of conspiracy to possess with intent to distribute and conspiracy to import controlled substances, pursuant to 21 U.S.C. §§ 846 and 963, respectively, the Government must prove there was: (1) an agreement between two or more persons to violate the controlled substances laws; (2) the defendant had knowledge of the agreement; and (3) the defendant voluntarily participated in the conspiracy. United States v. Thomas, 348 F.3d 78, 82 (5th Cir. 2003). "The agreement may be tacit, and the jury may infer its existence from circumstantial evidence." United States v. Crooks, 83 F.3d 103, 106 (5th Cir. 1996). "Knowledge of the conspiracy may be inferred from a collection of circumstances." United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir. 1993) (quotation omitted). Mere presence at the scene of the offense without more is insufficient to support an inference of participation in a conspiracy. United States v. Chavez, 947 F.2d 742, 745 (5th Cir. 1991). A defendant's presence or

association, in conjunction with other evidence, may be sufficient to support a finding that a defendant participated in a conspiracy. Id.

To sustain a conviction for possession with intent to distribute a controlled substance, pursuant to 21 U.S.C. § 841, the evidence must prove that a defendant: (1) knowingly; (2) possessed a controlled substance; (3) with the intent to distribute it. Id. A defendant's intent to distribute a controlled substance may be inferred from the possession of a large amount of the controlled substance. United States v. Hernandez-Palacios, 838 F.2d 1346, 1349 (5th Cir. 1988) (citing Williams-Hendricks, 805 F.2d at 500). Importation of a controlled substance, pursuant to 21 U.S.C. §§ 952 and 960, requires proof that a "defendant participated in bringing a quantity of a controlled substance into the United States knowing that the substance was controlled and that it would enter the United States." Crooks, 83 F.3d at 106.

The only element at issue in the instant case is the sufficiency of the evidence to prove Marshall's knowledge. Generally, a jury may infer a defendant knows about the presence of drugs if he exercises control over a vehicle containing controlled substances. United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995). However, when drugs are hidden in a vehicle, control of the vehicle alone is insufficient to prove knowledge. United States v. Pennington, 20 F.3d 593, 598 (5th Cir. 1994). In hidden compartment cases, a fair assumption can be made that a third party may have hidden the controlled substances in the vehicle, using a defendant as an unwitting carrier of controlled substances. Ortega Reyna, 148 F.3d at 544. In addition, there is a heightened assumption of innocence when the "vehicle is a 'loaner' or has otherwise been in the possession of the suspect for only a short time." Id.

Because of the possibility that a defendant may be an unwitting carrier,

6

"this Court has normally required additional 'circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.'" Resio-Trejo, 45 F.3d at 911 (quoting United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990)). Circumstantial evidence of guilty knowledge may include inconsistent statements; implausible explanations; nervousness, or lack thereof; failure to make eye contact; reluctance to answer questions; lack of surprise when contraband is discovered; possession of a large sum of money; and obvious alterations to a vehicle, especially when the person has been in possession of the vehicle for a significant period of time. Ortega Reyna, 148 F.3d at 544; see also United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990) (nervous behavior at a checkpoint may be "persuasive evidence of guilty knowledge"); United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989) ("the unusual nature of the fuel tanks and their special fittings [that] were observable [upon an] exterior inspection" of the vehicle supported a finding of knowledge on the part of the defendant).

In the present case, Marshall's demeanor became the focus of the inspector's attention from the moment he entered the primary inspection lane. Marshall was unusually friendly and was gripping the steering wheel tightly. Additionally, the suspicious condition of the exterior of the truck was obvious to the inspectors because of the copious amount of oil on the bottom of the truck, which quickly pooled onto the ground. Agents also found noticeable tampering evident on some of the bolts holding the gas tank and taillights. All of these unusual aspects of the truck should have been very evident to a self-admitted mechanic such as Marshall. The uncommonly clean interior of the truck and the single key on the key ring only added to the suspicious condition of the truck.

Moveover, Marshall gave contradictory explanations concerning how he

came to be in Mexico and in possession of the truck.[2] "Perhaps the strongest evidence of a criminal defendant's guilty knowledge is inconsistent statements to federal officials." Diaz-Carreon, 915 F.2d at 954-55 (citing Williams-Hendricks, 805 F.2d at 501). "[A] 'less-than-credible explanation' for a defendant's actions is 'part of the overall circumstantial evidence from which possession and knowledge may be inferred.'" Id. at 955 (quoting United States v. Phillips, 496 F.2d 1395, 1398 n.6 (5th Cir. 1974)). Initially, Marshall told the agents at the primary inspection station that he was returning to Brownsville and was in the process of buying the truck from the owner, a long-time friend named Arellano, whose name was on the title of the truck later found by agents. After his arrest, the name of Marshall's "long-time friend" and owner of the truck changed to Cristobal Carrillo. In subsequent statements, Marshall told agents he borrowed the truck from the owner at 8:00 a.m. to go to Matamoros. He said he took the truck to a car wash and stated that the owner of the truck was supposed to return to Houston with Marshall. Later in the confession, Marshall again contradicted himself when he told agents he took possession of the truck in Mexico at the car wash.

When confronted by agents about the contradictions, Marshall freely admitted he was lying. Upon further questioning, Marshall stated he had a friend take him into Mexico to meet the owner of the truck where Marshall received $160 and the key to the truck with instructions to leave the truck with "Meme" at a taxi stand, or a grocery store if the taxi stand was closed. He was then to return to Mexico with the truck's key. In Marshall's final depiction of

---

[2] Marshall attempts to justify his contradictory statements by referring to his diabetic medical condition as the cause of his confusion. However, agents testified that it was their custom to check on individuals every fifteen minutes once they are arrested. Marshall never told agents he was sick or that he needed food or medicine.

events, he claimed he met Cristobal in Mexico for lunch and received the key to the truck. Marshall confessed he was suspicious of the situation because his friend, the owner of the vehicle, did not want to drive his own truck across the international bridge.[3]

Marshall's nervous demeanor, the conditions of the truck, his suspicions about the truck and his friend's motives, and his contradictory statements provide a sufficient basis to find that Marshall knew the controlled substances were hidden in the truck and knowingly participated in the commission of the offenses charged in the amended indictment. Additionally, the truck contained controlled substances with a street value of $5,865,000. The possession of such a large amount of controlled substances, even if hidden, can be a basis for an inference of guilty knowledge on the part of a defendant. See Del Aguila-Reyes, 722 F.2d at 157 (finding that even though cocaine was hidden in a compartment not visible to the defendant, it was a reasonable inference that the defendant would not have been entrusted with the narcotics, worth $5,000,000, if "he were ignorant of all details surrounding his responsibility and the importance of the cargo in his care").

A court should not be inclined to alter a jury's verdicts. In the present case, the totality of the evidence and reasonable inferences drawn therefrom compel a finding that the evidence is sufficient to support the jury's findings, beyond a reasonable doubt, that Marshall knowingly committed the offenses of conviction.

---

[3] Marshall attempts to use his medical condition and leg amputation to suggest he was targeted and used to drive the drug laden vehicle without his knowledge due to his sympathetic appearance. However, it is equally plausible for the jury to have concluded that Marshall knew of the drugs and used his physical disabilities as a way to distract the inspectors from suspecting him of transporting the drugs.

B.      Jury Voir Dire

Marshall contends that the district court erred when it, sua sponte, read to the venire panel the deliberate ignorance instruction during voir dire. A trial court has broad discretion under Federal Rule of Criminal Procedure 24 to conduct voir dire and determine its scope. United States v. Garcia, 86 F.3d 394, 401 (5th Cir. 1996); United States v. Black, 685 F.2d 132, 134 (5th Cir. 1982). Generally, a challenge to the scope of the voir dire proceedings is reviewed for abuse of discretion. United States v. Munoz, 150 F.3d 401, 412 (5th Cir. 1998). If the Court finds an abuse of discretion, we then must decide if any resulting error was harmless. Id. "Harmless error is '[a]ny error, defect, irregularity, or variance which does not affect substantial rights'" and does not prejudice a defendant. Id. at 412-13 (quoting Fed. R. Crim. P. 52(a)). Prejudice only occurs "when the error 'ha[s] affected the outcome of the district court proceedings.'" Id. (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

The Government, however, argues that a plain error standard is appropriate because Marshall failed to raise the argument in the district court. "We may reverse for plain error only if (1) there was error (2) that was clear and obvious and (3) that affected the defendant's substantial rights." Munoz, 150 F.3d at 413. To meet the third prong of the plain error test, a defendant must specifically show prejudice. Id. In addition, even in the presence of plain error, "we should exercise our discretion to reverse only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted).

We find that under either standard of review, the district judge's reading of the deliberate ignorance instruction to the venire panel fails to constitute reversible error. While it is unusual for a venire panel to hear a rendition of

deliberate ignorance law during voir dire, it did not constitute error in the present case. Upon review of the record, we find the district court was only attempting to ascertain potential jurors' bias for or against that particular area of the law and did not abuse its discretion in doing so. The district judge stated that the jurors "may" be given the instruction, and after reading it, asked if anyone could not follow the instruction if it were given to them at the conclusion of the trial. The panel was not instructed to absolutely apply the principles of deliberate ignorance. Nor is there evidence the jury felt compelled to apply the law of deliberate ignorance to the facts of the case based upon the initial presentation to the complete venire panel.

However, if merely broaching the subject of deliberate ignorance with the venire panel could constitute error, Marshall's substantial rights were not affected by the district court's actions during voir dire, and his rights to a fair trial were not prejudiced. Prejudice, if any, to Marshall was cured by the final charge to the jury, which included a proper deliberate ignorance instruction, as discussed below. Id.

C. Jury Instructions

Marshall additionally argues that it was error to include the deliberate ignorance charge in the final jury instructions.[4] Challenges to jury charges require a determination whether

---

[4] The district court included a deliberate ignorance instruction in the final jury charge, which recited the pattern jury instruction: "The word 'knowingly' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident. You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact." Fifth Circuit Pattern Jury Instructions (Criminal) § 1.37 (2001).

> the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them. A district court has broad discretion in framing the instructions to the jury and this Court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law.

United States v. Threadgill, 172 F.3d 357, 367-68 (5th Cir. 1999) (quotation and citation omitted). The trial court's charge must be supported by the evidence adduced at trial. United States v. Mendoza-Medina, 346 F.3d 121, 132 (5th Cir. 2003). In reaching a decision whether the instruction was properly given, "we 'view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government.'" Id. (quoting United States v. Lara-Velasquez, 919 F.2d 946, 950 (5th Cir. 1990)). If error is found, the harmless error analysis applies. United States v. Cartwright, 6 F.3d 294, 301 (5th Cir. 1993).

"The purpose of the deliberate ignorance instruction is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." Lara-Velasquez, 919 F.2d at 951. "It is only to be given when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." Threadgill, 172 F.3d at 368 (citing United States v. Wisenbaker, 14 F.3d 1022, 1027 (5th Cir. 1994)). We have cautioned that a deliberate ignorance instruction should be used sparingly. Id.

The deliberate ignorance instruction is properly given if the evidence shows: (1) the defendant's subjective awareness of a high probability of the existence of illegal conduct; and (2) a purposeful contrivance by the defendant to avoid learning of the illegal conduct. Id. As long as the evidence in the record

satisfies both prongs, giving the instruction does not constitute error. See United States v. Chen, 913 F.2d 183, 191 (5th Cir.1990).

    1. <u>Subjective Knowledge by a Defendant</u>

To satisfy the first prong of the deliberate ignorance instruction test, the Government must present evidence which supports an inference that a defendant subjectively knew his conduct to be illegal. United States v. Nguyen, 493 F.3d 613, 619 (5th Cir. 2007). It is not enough for the Government to present evidence which only supports an inference that a reasonable person would have known his conduct to be illegal. Id. "The evidence should allow a 'glimpse' into the defendants' minds when there is no evidence pointing to actual knowledge." Id. at 619-620 (citing Lara-Velasquez, 919 F.2d at 953 n.8). "Suspicious and erratic behavior may be sufficient to infer subjective awareness of illegal conduct." Id. at 620; see also United States v. Saucedo-Munoz, 307 F.3d 344, 348 (5th Cir. 2002); United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994).

In the instant case, the Government presented sufficient evidence demonstrating Marshall subjectively believed he was taking part in illegal activity. Marshall admitted he thought it was suspicious that the owner would not drive his own truck into the United States, and instead would pay Marshall to do so. Marshall further reinforces the inference of subjective knowledge by admitting he knowingly lied to agents during the interrogation, after providing numerous conflicting stories to agents about how he came into possession of the truck, how he arrived in Mexico, what he was doing there, and where he was traveling to upon his re-entry into the United States. Given the totality of Marshall's suspicious behavior, the evidence supports a finding Marshall was subjectively aware of the probability of the existence of illegal conduct.

2. <u>Purposeful Contrivance to Avoid Learning of the Illegal Conduct</u>

"If 'the circumstances in this case were so overwhelmingly suspicious that the defendants' failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge,' then [the] second prong can be satisfied." Nguyen, 493 F.3d at 621 (quoting United States v. Daniel, 957 F.2d 162, 169-70 (5th Cir. 1992)); see also United States v. Ricardo, 472 F.3d 277, 286 (5th Cir. 2006), cert. denied, ___U.S.___, 127 S.Ct. 2076 (2007) ("[F]ailure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge."). Circumstantial evidence can be used to support a finding of purposeful contrivance. Nguyen, 493 F.3d at 621.

Marshall claims he picked the truck up at a car wash in Mexico, and it was cleaned prior to coming back to the United States. Marshall, who is a mechanic by trade and former owner of a mechanic shop, purportedly failed to notice the excessive oil dripping from the vehicle and pooling on the ground. He also did not notice that the bolts on the gas tank and taillights were tampered with prior to his travels. With his extensive knowledge of vehicles, and his statement that he intended to purchase the truck, Marshall presumably would have wanted to inspect it prior to any purchase.

Even if this Court were to ignore Marshall's failure to observe the obvious tampering with the truck, any version of Marshall's portrayal of events demonstrates a purposeful lack of inquiry. See id. at 622 ("Not asking questions can be considered a purposeful contrivance to avoid guilty knowledge."). Despite the illogical and suspicious nature of the requests made of Marshall, he nonetheless attempted to bring the truck into the United States, while purposely refusing to learn about the controlled substances hidden in the truck. Based on the totality of the evidence, Marshall's behavior is sufficient to show an inference

14

of purposeful contrivance that satisfies the final part of the test.

In conclusion, we find the district court did not err in giving the deliberate ignorance instruction during voir dire or in the final charge.

D.  Responses to Jury Questions

Marshall contends the district court erred in its responses to two jury questions.  First, Marshall contends the jury disagreed over the interpretation of a jury instruction and rather than responding to it, the court erroneously issued an Allen charge.[5]  Second, Marshall claims the district court erred when it failed to clarify the deliberate ignorance instruction in response to a second jury question.

### 1.  The Allen Charge

The district court received Jury Note Number 7, after more than nine hours of deliberations, which stated, "We cannot reach an agreement because one juror interprets the instructions differently than the others.  We feel she is not following the directions."[6]  The jury did not specifically identify the jury instruction in dispute.  The district court interpreted the note as notice by the jury that they were deadlocked.  In response to the note, the district court issued the Allen charge to the jury,[7] using the instruction found in Fifth Circuit Pattern

---

[5] The Allen charge is utilized when jurors are deadlocked to prompt them to reassess their methods of deliberation in attempt to reach a consensus.  Allen v. United States, 164 U.S. 492 (1896).

[6] The district court provided a written copy of the final jury charge to the jury for their use during deliberations.

[7] It is unclear whether defense counsel timely objected to the district court's first response.  The record supports a finding that an objection was not lodged until after the response was sent to the jury.  Therefore, a plain error standard might apply.  However, an abuse of discretion standard is used in the analysis.  Concerning the second note, counsel did not object; therefore, the plain error standard is applied.

Jury Instructions.

An Allen charge is a permissible exercise of the district court's discretion if "the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial." United States v. McClatchy, 249 F.3d 348, 359 (5th Cir. 2001). "[T]he trial court 'is vested with broad discretion to evaluate whether an Allen charge is likely to coerce a jury into returning a verdict it would not otherwise return.'" United States v. Nguyen, 28 F.3d 477, 484 (5th Cir. 1994) (quoting United States v. Gordon, 780 F.2d 1165, 1177 (5th Cir. 1986)).

Marshall believes that giving the charge was generally inappropriate. He fails, however, to identify any evidence proving the charge had a coercive effect on the jury or prejudiced his case. In fact, the note in question was received by the district court at 11:45 a.m. The jury reached its verdicts five hours later. Given the time lapse, there is no evidence the jury was coerced into reaching verdicts it might not otherwise have reached. United States v. Clayton, 172 F.3d 347, 352 (5th Cir. 1999) (time lapses of twenty-five and forty-five minutes between an Allen instruction and the rendering of verdicts is not indicative of coercion). The trial court did not err when it provided the Allen charge to the jury. Marshall's complaint to the Allen charge is without merit.

2. The Deliberate Ignorance Jury Question

The district court received Jury Note Number 8, stating, "Can you give us a definition of the word deliberately as used in the definition knowingly." The district court sent a response back to the jury stating, "In response to Jury Note Number 8, you are instructed that the Final Jury Instructions contain all of the definitions and instructions that you will receive during your deliberations." Marshall objects to the district court's response for the first time on appeal. He

argues that this response merely referred the jury back to the same deliberate ignorance instruction that caused the jury's confusion in the first instance and did not assist the jury.

"When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with concrete accuracy." United States v. Stevens, 38 F.3d 167, 169-70 (5th Cir. 1994) (quotation omitted). "When evaluating the adequacy of supplemental jury instructions, we ask whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it." Id. at 170. A trial judge is afforded great discretion in formulating a response to jury questions. Id.; see also United States v. Duvall, 846 F.2d 966, 977 (5th Cir. 1988).

In the present case, the district court did not send a supplemental instruction to the jury in response to the question. The district court instead referred the jury to the final jury instructions already before it. If, in response to a jury question, the trial court directs the jury's attention to the original instructions, the response will be deemed sufficient if the original charge is an accurate statement of the law. United States v. Arnold, 416 F.3d 349, 359 n.13 (5th Cir. 2005) (citing United States v. Valdiosera-Godinez, 932 F.2d 1093, 1098 (5th Cir. 1991) (if a judge refers the jury to a presumptively accurate charge, the ensuing conviction is not invalid due to alleged confusion)).

The jury charge as a whole, and the deliberate ignorance instruction in particular, are correct statements of the law and referring the jury to the instructions was not error. As previously stated, the district court charged the jury with the pattern jury deliberate ignorance charge. The jury requested a

definition of "deliberately," not specifically defined in the charge. The word "deliberately" is a term within a juror's common understanding. See United States v. Varkonyi, 645 F.2d 453, 460 (5th Cir. Unit A May 1981); see also Ellis v. Lynaugh, 873 F.2d 830, 839 (5th Cir. 1989). It is not so technical or specific as to require a specific legal definition. Therefore, Marshall fails to establish that plain error was committed by the trial court's response and its reference to the original jury instructions.

E.     Extrinsic Evidence

Marshall claims the district court erred when it admitted testimony of Marshall's arrest warrant for unauthorized use of a motor vehicle.[8] Marshall contends this extrinsic evidence was irrelevant and prejudicial under Federal Rule of Evidence 404(b). The Government argues Marshall invited the introduction of the extrinsic evidence, or in the alternative, that error, if any, was harmless.

"We review a district court's decision to admit or exclude evidence for abuse of discretion." United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002). "Review of evidentiary rulings is heightened in a criminal case." Id. The invited error doctrine

> provides that when injection of inadmissable evidence is attributable to the actions of the defense, the defense cannot later object to such "invited error." Under this doctrine, a defendant cannot complain on appeal of alleged errors which he invited or induced, especially where the defendant may not have been prejudiced by the error. We will not reverse on the basis of invited error, absent manifest injustice.

United States v. Solis, 299 F.3d 420, 452 (5th Cir. 2002) (quotations omitted); see

---

[8] The nature of the criminal charge giving rise to the arrest warrant was not disclosed to the jury.

also United States v. Raymer, 876 F.2d 383, 388-89 (5th Cir. 1989).

Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove a defendant acted in conformity with some character trait. Such evidence, however, is admissible for other reasons such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This Court established a two-part test to determine the admissibility of extrinsic evidence: (1) "it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character," and (2) "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). Trial courts need not make balancing test findings on the record, unless requested by the defendant. United States v. Nguyen, 504 F.3d 561, 574 (5th Cir. 2007), cert. denied, Tran v. United States, __U.S. __, 128 S.Ct. 1324 (2008).

During cross examination of an agent, Marshall's counsel elicited testimony highlighting the time of arrest versus the time of the discovery of the narcotics.[9] The Government, on redirect of its witness, sought admission of evidence that Marshall had been arrested due to the existence of an outstanding warrant. Marshall's counsel objected and the following argument then ensued at the bench:

> [Prosecutor]: Judge, [defense counsel] made a big issue

---

[9]The colloquy between defense counsel and the agent was as follows:
Q: When did you – take Mr. Marshall into custody?
A: 11:49
Q: You actually took him into custody at that time?
A: Yes, sir.
Q: Before you found the drugs?
A: Yes, sir.

about the time line, and he's trying to imply that they took a long time before they- they took Mr. Marshall into custody. The reason they took Mr. Marshall into custody right away was because he had an outstanding warrant on that unauthorized use of a motor vehicle. And [defense counsel]'s portraying that they took him in early without finding any drugs. There was a reason for taking him in early because he came out positive on a hit, and I think I should be allowed to bring that out.

[Defense Counsel]: Your Honor, it has nothing to do with that. The questioning has nothing to do with why he was taken into custody. It's simply that he was in custody and that nobody spoke to him. That's the only point that was made.

THE COURT: I'm going to allow the question. Thank you.

[Defense Counsel]: Your Honor, if I may for the record, I believe it's unfairly prejudicial and it has nothing to do with these charges and–

THE COURT: I understand you have an objection. It's overruled.

The line of questioning elicited on cross examination by Marshall attempted to establish that the agents prematurely arrested Marshall. It appears from the record that, if the district court had allowed questioning to end on that note, the jury would have been left with a false impression; Marshall invited the admission of the warrant testimony.

Additionally, the only two brief references made to the arrest warrant were the Government's question to the agent and one reference during the closing argument. The district court also provided a "similar acts" instruction in the final charge and repeatedly instructed the jury of the Government's burden of proof, thus minimizing the danger of undue prejudice. United States

v. Sanders, 343 F.3d 511, 518 (5th Cir. 2003); see also United States v. Gonzalez-Lira, 936 F.2d 184, 192 (5th Cir. 1991). In light of the overwhelming evidence of Marshall's guilt, the minimal references to the existence of a warrant, and the trial court's limiting instruction, this Court cannot say that Marshall's right to a fair trial was prejudiced. The trial court, therefore, did not abuse its discretion in admitting the evidence of the warrant.

F.    Cumulative Effect of Errors

Marshall's final contention is that his convictions require reversal because of the cumulative effect of the multiple claimed errors. A cumulative error analysis is unnecessary due to the individual findings noted above. Marshall's substantial rights to a fair trial were not violated.

## III. CONCLUSION

For the above reasons, we find the district court did not err during the trial of the case and the evidence is sufficient to support the appellant's convictions. We AFFIRM the convictions and judgment in this case.

AFFIRMED