# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31227

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KEVIN PAUL CALMES; CALMES MOTORSPORTS, L.L.C.,

Defendants - Appellants

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CR-150-1

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Kevin Paul Calmes (Calmes) and Calmes Motorsports, L.L.C. (CM) were convicted by a jury of money-laundering and financial-reporting offenses, relating to three transactions. Each was convicted of the same three counts of structuring a transaction to avoid IRS reporting requirements (2, 6, and 8). In addition, Calmes was convicted of money laundering (count 3) and of causing CM to fail to file IRS Form 8300 (report of cash payments over $10,000 received in a trade or business; count 4), while CM was convicted of willfully failing to

---

* Pursuant to 5th Cir. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

file Form 8300 (count 5).  Both defendants were acquitted, *inter alia*, on a related conspiracy charge.  Calmes was sentenced, *inter alia*, to 30 months' imprisonment; CM, *inter alia*, to three years' probation. They challenge their convictions.  AFFIRMED.

## I.

Calmes was in charge of the sales staff of CM, his family's dealership in Louisiana, which, among other products, sold motorcycles.  The charges in the indictment relate only to motorcycles.

After talking to customers, salesmen would request a price from Calmes for the motorcycles, and he would decide whether to negotiate from the original price and, if so, by how much.  In Louisiana, although many do so, motorcycle dealerships are not required to collect sales tax because consumers must pay the tax in order to receive a title and license plate.  CM preferred to collect sales tax, however, because it could earn fees along with collection.

Several of the convictions stem from Calmes' and CM's failure to file IRS Form 8300.  The IRS requires trades and businesses to report cash payments of more than $10,000 using that form.  *See* 31 U.S.C. § 5331 (reports relating to coins and currency received in nonfinancial trade or business).  It has four sections:  (1) identity of the "individual" who made the transaction; (2) identity of the "person", which includes, *inter alia*, an individual or company, on whose behalf the transaction was made; (3) description of the transaction and method of payment; and (4) information regarding the business that received the transaction.  It is illegal to structure a transaction with the purpose of avoiding the filing requirement.  31 U.S.C. § 5324(b).

At trial, several convicted drug dealers testified against Calmes and CM in exchange for immunity or the possibility of sentence reductions.  Among

these witnesses were Nguyen and Matthews. In addition, an undercover IRS Agent (the Agent), who had posed as a drug dealer, testified.

Nguyen described himself as a 24-year-old methamphetamine-and-ecstasy dealer in the Baton Rouge area who enjoyed expensive clothing, wore lots of jewelry, and paid in one-hundred-dollar bills wrapped in rubber bands. He purchased several motorcycles at CM. For a purchase in December 2006, underlying one (count 2) of the three structuring convictions, Nguyen told a CM finance associate to put the new motorcycle in Nguyen's former girlfriend's name. The associate helped Nguyen with the transaction, and Calmes was "in and out" during the negotiation. Calmes was not "an active salesman", but he supervised the negotiation and accepted the cash. Nguyen selected a motorcycle for exactly $10,000, and then added tire protection. The associate recommended Nguyen pay his sales tax elsewhere. Although CM's invoice listed the price as $9,934.64, CM's deposit slip, dated the following day, totaled $10,000.

A major cocaine dealer in the Baton Rouge area, Matthews was also a regular customer at CM, buying ten motorcycles over the course of a decade. On one occasion, he asked Calmes to be one of his cocaine suppliers, but Calmes laughed at him and "brushed it off". For nine of the ten motorcycles, Matthews purchased them in the names of his common-law wife, common-law mother-in-law, and stepbrother, Stephon Chaney. No one at CM ever told Matthews about IRS Form 8300, but Calmes did advise him they could "get around the IRS" by "keep[ing] the payment under [$]10,000". Calmes also suggested the idea of putting purchases in the names of third parties.

For his final motorcycle purchase on 27 March 2007, underlying four counts of conviction (3–6), Matthews gave Calmes between $13,000 and

$13,500, in denominations of five, ten, 20, and 100-dollar bills.  He understood the payment to include the cost of the motorcycle, tax, title, and registration, even though he signed the bill of sale, which stated he would pay those fees and tax elsewhere.  And, CM's paperwork stated $4,800 of the purchase price had been financed, with the remainder (less than $10,000) in cash.

Matthews initially put the motorcycle in his name but, two months later, decided to transfer the motorcycle to Chaney.  Calmes prepared the forms for the transfer, with Calmes and Matthews signing the paperwork (Matthews signed Chaney's signature).  In an "Affidavit of Correction", Kacey Calmes, Calmes' brother and also a CM employee, stated the name was being changed because "[t]he first assignment was incorrectly filled out by dealer".  The vehicle-application form was prepared by Calmes and stated there had been no payment for title fees or taxes.  Matthews signed that form with Chaney's name.  AAA Title and Notary Services paid $933 in fees on behalf of Chaney.  Both Chaney and Matthews testified, however, that they had never been to AAA Title nor contracted its services, though it acknowledged doing title work for CM.  Matthews testified he used the motorcycle exclusively, although Chaney did the insurance paperwork for him when Matthews was involved in an accident with the motorcycle.

For the 31 March 2009 purchase underlying the final transaction at issue (count 8), the jury was presented with video and audio recordings of conversations spanning months between Calmes and the Agent, an IRS criminal investigator posing as a drug dealer.  The Agent approached Calmes in October 2008, to attempt to purchase a motorcycle for more than $10,000, using cash and without filing Form 8300.  Calmes refused to conduct the transaction in cash without filing the form; but, after several months, he

suggested they could get around the IRS requirement by using a combination of a personal check and cash. Calmes also agreed to conduct the transaction in a third-party's name. The Agent provided both a check for $3,400 and $10,000 in cash.

Related to three of the issues on appeal, the court: refused Calmes' requested entrapment instruction; responded to a jury question concerning count three (money laundering); and denied defendants' motion for a new trial based on claimed newly-discovered evidence concerning the motorcycle Matthews put in Chaney's name.

## II.

Appellants first contend there was insufficient evidence for all counts of conviction. In addition, Calmes claims the district court committed reversible error by refusing to give his requested entrapment instruction, and Appellants claim such error as a result of both the court's claimed incorrect response to a jury question and its denial of their joint new-trial motion.

## A.

Regarding the insufficient-evidence claims, because Appellants moved for judgment of acquittal based on insufficiency of the evidence at the close of the Government's case in chief, at the close of all evidence, and after the judgment, we review *de novo*. *E.g.*, *United States v. Steen*, 634 F.3d 822, 825 (5th Cir. 2011).

Along that line, this court "examines whether a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt". *United States v. Jones*, 664 F.3d 966, 976 (5th Cir. 2011) (citation and internal quotation marks omitted). Also, "[i]n reviewing the evidence presented at trial,

12-31227

we draw all reasonable inferences in favor of the jury's verdict" and "ask[] only whether the jury's decision was rational, not whether it was correct". *Id.* (citations and internal quotation marks omitted). In that regard, this court reevaluates neither the weight of the evidence nor the credibility of the witnesses. *United States v. Grant*, 683 F.3d 639, 643 n.3 (5th Cir. 2012).

For starters, Appellants contend the not-guilty verdict on the conspiracy count casts doubt on the sufficiency of the evidence for all substantive-count convictions. But, "the rule is universal and without exception that consistency in a jury verdict is not required". *Ehrlich v. United States*, 238 F.2d 481, 485 (5th Cir. 1956).

**1.**

Calmes and CM were convicted of three counts of structuring a transaction to evade IRS reporting requirements. The counts were for the respective transactions involving Nguyen (count 2), Matthews (count 6), and the Agent (count 8).

They claim insufficient evidence on count two for several reasons: Calmes and CM never "directed" Nguyen on how to avoid reporting because Nguyen already knew about the $10,000 filing requirement; Calmes simply did the paperwork, and never dealt with cash in that transaction; his involvement was "insignificant" and "minimal" because he only negotiated the price; and the CM salesman, a witness, did not testify Calmes was involved in the transaction.

On count six, Appellants contrast the "pathological liar", Matthews, and his claims of paying more than $13,000, against CM's claimed meticulous records, which stated the price was $9,800, below the Form 8300 threshold.

6

12-31227

Finally, on count eight, Appellants claim the idea for structuring the transaction came from the Government. They emphasize Calmes refused to take more than $10,000 cash without filing Form 8300, and characterize the discussion of how to structure the transaction as simply giving the Agent options. They also point to an example transaction from IRS Publication 1544 ("Reporting Cash Payments of Over $10,000"), in which a combination of a personal check and cash, where the cash is $10,000 or less, does not trigger the Form 8300 requirement.

The three structuring convictions involve violations of 31 U.S.C. § 5324, which makes it illegal to "structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with [one] or more nonfinancial trades or businesses" with "the purpose of evading the report requirements of [§] 5331". 31 U.S.C. § 5324(b)(3).

Nguyen testified he told the sale associates at CM he wanted to avoid IRS reporting when purchasing motorcycles. For the purchase that is the basis of count two, Nguyen testified Calmes told him "just give us the same thing you did last time", at which point Nguyen handed the cash, exactly $10,000, to the sale associate, who handed it to Calmes. The paperwork filed on the motorcycle, however, listed amounts slightly under $10,000. For count two, a rational juror could have found, beyond a reasonable doubt, the elements for conviction were satisfied.

Similarly, Matthews' testimony provided sufficient evidence for conviction on count six. Again, this court does not reevaluate the credibility of witnesses, but rather asks whether any rational juror could have found the elements of this structuring offense satisfied beyond a reasonable doubt.

7

12-31227

For count eight, the Agent testified the idea for splitting the transaction into cash and a personal check came from Calmes. On cross examination, defendants failed to elicit testimony the Government had first suggested the use of a personal check in conjunction with cash. And, because Calmes did not testify, there was no conflicting testimony. The Government need not establish Calmes and CM knew structuring was illegal, only that they knew of the requirement to file Form 8300 and structured the transaction to avoid the filing requirement. *See United States v. Threadgill*, 172 F.3d 357, 371 n.10 (5th Cir. 1999). Calmes and CM never denied knowledge of the Form 8300 requirement for cash purchases over $10,000, and a rational juror could have found, beyond a reasonable doubt, that Calmes and CM structured the transaction to avoid reporting the purchase to the IRS, whether or not they acted with knowledge structuring was illegal or, as they contend, simply to give options to a customer they knew wanted to avoid reporting. Because giving options with the purpose of avoiding the filing requirement constitutes a violation of 31 U.S.C. § 5324, there was sufficient evidence for a rational juror to convict Appellants on count eight.

**2.**

Calmes' money-laundering conviction on count three was pursuant to 18 U.S.C. § 1956(a)(1), which provides that anyone who,

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or . . . to avoid a transaction reporting requirement under State or Federal law[, commits money laundering].

8

12-31227

Calmes contends:  he had no knowledge the purchase money was the proceeds of drug trafficking; and the Government failed to produce any evidence of such knowledge.  The jury heard testimony from Matthews, the customer on this transaction, that he had a direct conversation with Calmes regarding drug trafficking, and that Calmes knew about Matthews' drug-trafficking convictions.  A rational juror could have found, beyond a reasonable doubt, that Calmes had the requisite knowledge of the source for the transaction.

**3.**

Counts four and five relate to Calmes' and CM's responsibility, respectively, to file Form 8300.  Calmes was charged under 31 U.S.C. § 5324(b)(1) ("No person shall, for the purpose of evading the report requirements of section 5331 or any regulation prescribed under such section . . . cause or attempt to cause a nonfinancial trade or business to fail to file a [required] report.").  CM was charged under 31 U.S.C. § 5331, which requires filing Form 8300 when a trade or business "receives more than $10,000 in coins or currency in [one] transaction (or [two] or more related transactions)".

Matthews testified he paid at least $13,000 in cash for the motorcycle, regardless of what amount Calmes and CM used on the bill of sale. As noted *supra*, neither Calmes nor CM contested their knowledge of the requirement to file Form 8300 for cash transactions of more than $10,000.  In the light of the testimony regarding the transaction with Matthews, a rational juror could have found, beyond a reasonable doubt, that Calmes and CM intentionally failed to file Form 8300 following the transaction.

**B.**

9

Before trial, Calmes requested a jury instruction on entrapment, and the court ordered the Government to submit a response. It contended an entrapment instruction was merited only if Calmes established a *prima facie* showing of entrapment, and, even then, only for the counts involving the Agent. Calmes' memorandum in support acknowledged he could only receive an instruction after making that *prima facie* showing, but stated "[t]he defense feels certain . . . it will".

At trial, the court refused the requested entrapment instruction and instead instructed the jury: "Entrapment is not an issue in this case". And, Calmes' attorney advised the court he had no objections to the instructions. The Government contends this failure to object, together with the related comments, constitutes waiver—the intentional relinquishment of a known right. At oral argument here, when asked why the entrapment issue had not been waived, Calmes' attorney claimed our review is instead for plain error. (No authority need be cited for the rule that we, not the parties, determine the applicable standard of review.)

Although this issue was arguably waived, the result is the same under plain-error review. Under that standard, Calmes must show a forfeited plain (clear or obvious) error that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he shows such reversible plain error, we have the discretion to correct the error, but should do so only if it seriously affects the fairness, integrity, or public reputation of the proceedings. *Id.*

An entrapment defense has two elements: Government inducement; and a lack of predisposition to commit the crime. *Mathews v. United States*, 485 U.S. 58, 62–63 (1988). When defendant properly requests an entrapment instruction, and there is sufficient evidence to support a jury's finding

entrapment, a district court commits reversible error by refusing to instruct the jury on that issue. *See United States v. Gutierrez*, 343 F.3d 415, 419 (5th Cir. 2003). Along that line, the entrapment-related evidence is sufficient if it "provide[s] a basis for a reasonable doubt on the ultimate jury entrapment issue of whether criminal intent originated with the government". *United States v. Nations*, 764 F.2d 1073, 1080 (5th Cir. 1985). For the reasons that follow, the court did not clearly or obviously err in refusing the instruction.

Even viewing the entrapment-related evidence in the light most favorable to Calmes, there was insufficient evidence to support a jury's finding entrapment. Calmes first refused to take the $13,000 cash, stating he would be required to file Form 8300 with the IRS. He then gave the Agent the option of combining cash and a personal check to avoid the reporting requirement. Although Calmes may not have known that structuring to avoid filing Form 8300 was illegal, as explained *supra*, that knowledge is unnecessary for conviction. He presented no evidence to show the idea of structuring came from the Government.

Calmes' refusal to take $13,000 in cash without filing Form 8300 did not absolve him from guilt for the subsequent, distinct offense of structuring a transaction to avoid the filing requirement altogether. And, Calmes failed to present evidence to show he had no predisposition to commit the crime.

## C.

During its deliberations, the jury asked the court several questions, including: "[I]n Count 3 [money laundering]—if someone believes that only one dollar came from an illegal activity—[s]pecifically drug trafficking, does this constitute guilt? Is it an all or nothing on the total proceeds received?" The court responded:

12-31227

> *Count 3 permits a conviction where the funds involved in the transaction are derived only in part from specified unlawful activity, in this case narcotics trafficking.* However, prior to finding a defendant guilty of Count 3, you must unanimously find beyond a reasonable doubt that each of the essential elements set forth on pages 35–36 of the jury instructions have been satisfied.

(Emphasis added.)  Pages 35 and 36 of the jury instructions in the appellate record, however, correspond to count two (structuring), rather than count three (money laundering).  As discussed *infra*, the jury charge in the record does not reflect whether it was the charge used by the court and counsel or the one used by the jury.  The jury returned its verdict roughly 90 minutes after receiving the answer.

Appellants contend the court abused its discretion by citing the incorrect page numbers in its response to the question.  For preserved error, this court reviews supplemental jury instructions for abuse of discretion, giving the district court "wide latitude in deciding how to respond to [such] questions". *United States v. Vickers*, 442 F. App'x 79, 85 (5th Cir. 2011) (quoting *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999)).

"When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with concrete accuracy."  *United States v. Marshall*, 283 F. App'x 268, 278 (5th Cir. 2008) (quoting *United States v. Stevens*, 38 F.3d 167, 169–70 (5th Cir. 1994)).  For preserved error, we review "whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it".  *United States v. Harris*, 104 F.3d 1465, 1473 (5th Cir. 1997) (citation and internal quotation marks omitted).  For unpreserved error, however, review is

12

for plain error only.  *See, e.g.*, *id.* (reviewing supplemental instruction for plain error where counsel agreed with court's response).

Counsel for Calmes and CM objected to the court's response to the jury question, but only as to a substantive issue (that the funds derived from the illegal activity must constitute a *substantial part* of the funds in question). Accordingly, review is for plain error only.

The court's response was a correct explanation of the law and responsive to the jury's question.  Moreover, the jury instructions are clearly labeled for each count.  Along that line, it is unclear from the record whether the jury had a differently paginated version of the jury instructions, with numbering consistent with that provided in the court's response.  The copy of the charge in the record on appeal has extensive footnotes, which Appellants' counsel represented at oral argument here were not on the jury's copy of the charge. That copy is not in the record on appeal.  Nor has any evidence been submitted that the pages in the jury's copy of the charge were not consistent with those used in the court's response.  Accordingly, Appellants fail to show the requisite clear or obvious error.

## D.

Calmes and CM's joint new-trial motion under Federal Rule of Criminal Procedure 33 involved only counts three through six, stemming from Matthews' 27 March 2007 purchase, and focused entirely on newly-discovered evidence:  a police report and affidavit in which Chaney claimed ownership, possession, and control of the motorcycle Matthews put in Chaney's name.  In denying the motion, the court found "at most . . . a mere conflict in evidence".

First, Appellants emphasize the complete lack of trustworthiness of Matthews (and the other convicted-drug-dealer witnesses) and contrast

Chaney's testimony as coming from "a clean cut man, who had the unfortunate luck of having Matthews as a brother". Claiming Chaney was the only trustworthy witness for these counts, Appellants contend his testimony was of the utmost importance, and maintain: "The only thing . . . the jury had to rely on . . . was the transfer of the [motorcycle] to . . . Chaney". Therefore, according to Appellants, Chaney's lies were material, and, had Appellants been able to impeach Chaney with the newly discovered evidence, the jury probably would have acquitted.

This court reviews for abuse of discretion the denial of a Rule 33 new-trial motion, with deference to the district court's superior vantage point. *United States v. Piazza*, 647 F.3d 559, 564–65 (5th Cir. 2011). The prerequisites for a new trial are: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal". *Id.* at 565 (citing, *inter alia*, *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004)). In short, failure to show even one of the five factors is fatal. *Id.* In reviewing the district court's new-trial denial, this court "must not revisit evidence, reevaluate witness credibility, or attempt to reconcile seemingly contradictory evidence". *United States v. Neuman*, 505 F. App'x 308, 308 (5th Cir. 2013) (quoting *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)).

At oral argument here, Appellants conceded they received notice before trial that the motorcycle had been reported stolen. Appellants attacked Matthews' credibility during the trial, but the jury convicted on those counts.

12-31227

The new evidence bears on the credibility of Chaney, who corroborated parts of Matthews' testimony.

In denying a new trial, the district court considered defendants' contentions and ruled:   the report constituted cumulative impeachment evidence that could have been discovered earlier; and any claimed error did not rise to the level of requiring a new trial.  There was no abuse of discretion.

### III.

For the foregoing reasons, the judgments are AFFIRMED.